UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:08-CV-149-DCK

| | |
|---|---|
| ALLIED MANUFACTURING TECHNOLOGIES, INC., <br>     Plaintiff, <br><br> v. <br><br> HURON, INC. <br>     Defendant. | ORDER |

**THIS MATTER IS BEFORE THE COURT** on the "Motion to Dismiss" (Document Number 6) filed on January 29, 2009, by Huron, Inc. ("Defendant"). Allied Manufacturing Technologies, Inc. ("Plaintiff") opposes the motion. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will **deny** the motion for the following reasons:

### I. FACTUAL ALLEGATIONS

The Complaint alleges that in May 2007, the parties entered into an installment sales contract whereby Plaintiff agreed to manufacture automobile parts for the Defendant. The Defendant then used these parts to build larger components for Chrysler Group. The agreement was finalized August 1, 2007, and provided that: Plaintiff would purchase a dedicated machine tool in the amount of $206,000, plus the cost of machine tool installation, in order to manufacture the parts required by the Defendant; Defendant would incur reimbursement charges for the cost of the machine tool and

other related contract costs in the event of order cancellation; and Plaintiff would have the right of first refusal prior to Defendant's pulling the work from Plaintiff. (Doc. No. 1-2, Exh. A at 8, ¶¶ 8-9.) The parts were to be made subject to the QS 9000 Quality Standard and ISO 14001 Environmental Standard. (*Id.* at 20-25.)

In addition, Plaintiff had the option to either obtain raw materials from an outside source or directly from Huron. If Plaintiff chose to use the raw materials supplied by the Defendant, Plaintiff would be paid $0.75 per part sold to Defendant. If Plaintiff obtained the raw materials from another source, it would receive $1.09 for each part sold to the Defendant. (*Id*. at 21.) Plaintiff ultimately obtained its raw materials directly from the Defendant. (*Id.* at 8, ¶ 8(e).) The contract was open-ended, with a provision that the Plaintiff would exclusively supply the part to the Defendant as long as the Defendant had the assembly from Chrysler and the Plaintiff met the Defendant's quality, delivery, and cost guidelines. (*Id.* at 21.)

Pursuant to the agreement, Plaintiff purchased the aforementioned machine tool. According to the Plaintiff, Michael Johnson ("Johnson"), Defendant's employee, repeatedly promised Plaintiff that the Defendant company would supply the Plaintiff with acceptable materials. However, when Plaintiff received the raw materials for production, they were defective and not usable. Plaintiff notified the Defendant of the state of the raw materials, but Johnson indicated that Defendant needed the parts immediately and stressed how it important it was for Plaintiff to continue manufacturing the parts using the defective materials. Johnson again promised to supply Plaintiff with acceptable materials and assured the Plaintiff that Plaintiff would not be responsible for any problems caused by the defective materials. Ultimately, Plaintiff supplied the Defendant with parts valued at $266,467.89; however, the Defendant only paid $202,876.00, leaving a balance due of $63,591.89.

The Defendant has neither rejected nor returned the goods, but kept them and refuses to pay for the remaining parts provided by Plaintiff. (*Id*. at 8-10.)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a Rule 12(b)(6) motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555; *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009). The Court must take all well-pleaded factual allegations in the complaint as true, but need not accept as true "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000) (explaining that a court need not accept as true legal conclusions, unwarranted inferences, unreasonable conclusions, or arguments).

Assertions of fraud "face a stiffer hurdle and must comply with the heightened pleading standard" of Federal Rule of Civil Procedure 9(b), which "requires that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'" *TSC Research, LLC v. Bayer Chems. Corp.*, 552 F. Supp. 2d 534, 538 (M.D.N.C. 2007) (adopting the magistrate judge's recommendation). Thus, a Plaintiff asserting fraud "must identify both the statements alleged to have been misleading or fraudulent and the reasons such statements were misleading. The reasons must go beyond a formulaic set of allegations; a plaintiff must allege

sufficient facts to support a reasonable belief that the defendant's statements were, in fact misleading." *Id.*

### III. ANALYSIS

#### A. <u>Arguments</u>

Defendant seeks dismissal of Plaintiff's second cause of action alleging fraud. Defendant argues that the Plaintiff provided "a strictly formulaic recitation of four (4) of the five (5) elements of fraud - the allegations consist only of labels and conclusions." (Doc. No. 7 at 1.) In support of this argument, Defendant cites Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and *Twombly*, 550 U.S. 544. In addition, Defendant contends that the dispute is only for breach of contract, not fraud: "Given that Allied had the option under the contract to obtain its raw materials from any source (not just from Huron), this relates solely to how much Allied is owed (if anything) under the contract. These are not claims for fraud." (Doc. No. 7 at 6-7.)

Plaintiff responds that its pleadings are not a formulaic recitation of the elements of fraud and that its allegations go beyond a mere breach of contract claim. Plaintiff argues that the Defendant has ignored the rest of the pleadings by referencing only paragraphs thirty-four through thirty-seven of the complaint. Finally, the Plaintiff submits that the parties should be allowed to conduct discovery in order to reveal adequate factual support of Plaintiff's allegations. (*See* Doc. No. 14.)

#### B. <u>Applicable Law</u>

In order to state a claim for fraud under North Carolina law, "a plaintiff must allege the following essential elements: '(1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage.'" *Karski v. Brazillian Res., Inc.*, 2009 U.S. Dist. LEXIS

37611, at *16 (W.D.N.C. May 4, 2009) (quoting *Breeden v. Richmond Cmty. College*, 171 F.R.D. 189, 194 (M.D.N.C. 1997)). Not only must these elements be well pled, but courts construe the Rule 9(b) requirement to mean that the pleading party must set out the "time, place, and contents of the alleged fraudulent misrepresentation, as well as the identity of each person making the misrepresentation and what was obtained thereby." *Breeden*, 171 F.R.D. at 195 (quoting *Liner v. DisCresce*, 905 F. Supp. 280, 287 (M.D.N.C. 1994)). North Carolina law limits "'the circumstances under which an ordinary contract dispute can be transformed into a tort action.' . . . '[P]unitive damages are generally not recoverable for breach of contract . . ..'" *Capitol Factors, Inc. v. Fryday Club, Inc.*, 209 F. Supp. 2d 583, 584 (W.D.N.C. 2002) (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 345-47 (4th Cir. 1998)).

However, North Carolina courts permit an exception where fraud also constitutes an independent and identifiable tort. *Food Lion, L.L.C. v. Schuster Mktg. Corp.*, 382 F. Supp. 2d 793, 800 (W.D.N.C. 2005). "[A] failure to perform can be the basis for a claim only where the promisor had a specific intent not to perform a [sic] the time the promise was made." *Wilson v. McAleer*, 368 F. Supp. 2d 472, 477 (M.D.N.C. 2005) (adopting the magistrate judge's recommendation) (citing *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 594 (M.D.N.C. 2003)). When a claimant's pleadings lack the specificity required to breach the Rule 9(b) hurdle, courts have been unwilling to apply this exception. *See, e.g., Cozzarelli v. Inspire Pharm. Incorp.*, 549 F.3d 618, 629 (4th Cir. 2008) ("[P]laintiffs have not explained with the necessary particularity why the statements that they cite . . . were false or misleading."); *United States v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (explaining that the claimant's pleading lacked "any specific facts about several important elements of the alleged scheme," including how the fraud was induced). In

addition, courts are unwilling to apply this exception when the claimant fails to show that the defendant had the specific intent to break its promise. *See, e.g., Aero. Mfg. Inc., v. Clive Merch. Group., L.L.C.*, 2006 U.S. Dist. LEXIS 33144, at *8 (M.D.N.C. May 23, 2006).

In contrast, courts have allowed fraud claims to stand in addition to a breach of contract claim where the claimant specifically describes the fraudulent conduct and the promisor's intent to deceive. *See, e.g.*, *Mid-Atlantic Blended Prods. v. Monotech Int'l*, 2006 U.S. Dist. LEXIS 52971, at *18-22 (M.D.N.C. May 9, 2006) ("Taking the complaint as a whole, plaintiff really alleges an ongoing and comprehensive scheme in which [the defendant] knowingly and disingenuously strung plaintiff along during the contract negotiations."); *Wilson*, 368 F. Supp. 2d at 477 (finding that the plaintiff adequately "alleged that defendants misrepresented (1) their intentions regarding the sale of their franchise, (2) the purposes of the services they were asking him to provide, and (3) their intent to ever pay him a commission.").

**C. Analysis**

In the present case, the Court does not agree with the Defendant's contention that Plaintiff provided merely a formulaic recitation of the elements of fraud. In its "Memorandum in Support," Defendant only references four paragraphs of the Complaint, ignoring paragraphs twenty-seven through thirty-three, which provide the bulk of Plaintiff's fraud allegations. (Doc. No. 7 at 5.) Plaintiff's Complaint states that the original purchase order was made via fax May 11, 2007. The prototype parts referenced in the order were shipped to the Defendant commencing May 15, 2007. On July 27, 2007, Johnson traveled to Lincoln County where the Plaintiff is located "for the purpose of convincing the owners of Allied to manufacture" the parts in question. (Doc. No. 1, Exh. A at 8.) This meeting led the Plaintiff to ship said parts to the Defendant in Michigan. (*Id.*) Plaintiff pleads

that Johnson "repeatedly promised" to "supply Allied with acceptable materials," "constantly stressed" and "threatened" Allied to continue making parts even though the materials provided were defective, and "assured Allied that Allied would not be responsible for any problems caused by the defective material." (*Id.* at 12.) Despite Johnson's representations to Allied, the Defendant "[c]laimed parts supplied by Allied were defective . . . when in fact [the Defendant] used said parts and/or never rejected or returned said parts to Allied." (*Id.* at 13.)

The Fourth Circuit has found that a "promissory misrepresentation may constitute actionable fraud when it is made with intent to deceive the promisee, and the promisor, at the time of making it, has no intent to comply." *Vantage Mktg., Inc. v. De Amertek Corp., Inc.*, 31 Fed. Appx. 109, 113-14 (4th Cir. 2002) (quoting *Leftwich v. Gaines*, 134 N.C. App. 502, 521 (1999)). Based upon these pleadings, the Court believes that the Plaintiff has adequately pled the elements of fraud, including the time, place, and contents of the alleged misrepresentations. The essential purpose of pleading has been achieved, as the Plaintiff's Complaint places the Defendant on notice of its claims "with the required specificity and demonstrates that [the Plaintiff] did not bring a case in which all the facts will come out only after the commencement of discovery." *Solomon Hess, L.L.C. v. Beach First Nat'l Bank*, 2009 U.S. Dist. LEXIS 57380, at *23 (E.D. Va. July 7, 2009). Therefore, the Court finds that the Plaintiff has pled with sufficient particularity to meet the Rule 9(b) requirement.

As to the Defendant's second argument, the Defendant cites no case law to support the proposition that the Plaintiff's claims are only for a breach of contract and not for fraud. The Defendant argues that because the Plaintiff "had the option under the contract to obtain its raw materials from any source," the dispute "relates solely to how much Plaintiff is owed (if anything) under the contract." (Doc. No. 7 at 6.) The court fails to see the reasoning behind this logic.

Plaintiff had the option to obtain its raw materials from any source at the outset of their agreement. It ultimately obtained the materials from the Defendant. After the Defendant supplied the Plaintiff defective raw materials, the Plaintiff "repeatedly notified" the Defendant of the materials' condition "and that it was impossible for [Plaintiff] to manufacture a merchantable and consistent product to meet the delivery and quality demands required." (Doc. No. 1, Exh. A at 9.) Despite the condition of the defective materials, the Defendant "indicated it needed the parts immediately," demanded that Plaintiff to "do the best it could with the defective material" (*Id.* at 10), and assured Plaintiff that it "would not be responsible for any problems caused by the defective material." (*Id*. at 12.)

The allegation here therefore is that Plaintiff was not simply operating under the terms of the contract, but was fraudulently induced into producing automobile components below the standards of acceptable quality. Taking the pleadings as true, the factual allegations are "enough to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555; *Robinson*, 551 F.3d at 222. Therefore, the Court finds that Plaintiff's Complaint is sufficient to withstand the Defendant's motion to dismiss.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's "Motion to Dismiss" (Doc. No. 6) is **DENIED.**

Signed: August 13, 2009

David C. Keesler
United States Magistrate Judge